**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

DANIAL RAY ADAIR and
DANIEL SCOT NICOLDS,

   **Plaintiffs,**

   v.             **Civ. No. 25-843 GJF/DLM**

RONNY D. HAYS, KEITH HUGHES,
CLOVIS RIVERA, MICHAEL BUGAYONG,
and CASEY GEHRT,

   **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on *Plaintiffs' Motion for Leave to File Second Amended Complaint* [Dkt. No. 44]. Defendants have filed their respective response briefs [Dkt. Nos. 45 and 46], and Plaintiffs have replied to each [Dkt. Nos. 48 and 49]. Therefore, the motion is fully briefed. After considering the proposed amended complaint and the arguments of the parties, the Court concludes that Plaintiffs should be permitted to amend their complaint to add their proposed Count 5. On the other hand, Plaintiffs' proposal to add Counts 6 and 7 would be futile, and therefore that portion of the motion for leave to amend will be denied.

## <u>BACKGROUND</u>

Plaintiffs, who are proceeding pro se, filed their original Complaint [Dkt. No. 1] in this Court on August 28, 2025, and then filed their Amended Complaint [Dkt. No. 23] as of right on October 20, 2025. In their Amended Complaint, Plaintiffs (who reside in Luna, New Mexico) allege that in 2022 they were co-owners of Big Horn Outfitters ("BHO"). Dkt. No. 23 at 3. They allege that they and their business were the subjects of an investigation conducted by the Seventh

Judicial District Court and the New Mexico Department of Game and Fish ("NMDGF"). *Id.* More specifically, they allege that in 2022 Defendants Ronny Hays (Lead Investigator for the New Mexico Seventh Judicial District Attorney's Office, or "7JDAO") and Clovis Rivera (a conservation officer with the NMDGF) obtained search warrants signed by Defendant Mercedes Murphy, the presiding Chief Judge in the New Mexico Seventh Judicial District Court. *Id.* The first warrant was for the bank records of BHO, while the second was for Plaintiffs' residences, Plaintiff Nicolds' hunting lodge, and the residence of a third individual, Jaron Richardson. According to the Amended Complaint, on August 30, 2022, Defendants and others used the residential search warrant "as a pretext for a general exploratory search or fishing expedition" to look for and seize items not particularly described in the warrant. *Id.* at 4. Plaintiffs allege that, after the search, Defendants Rivera and Hays requested and obtained an amended search warrant signed by Murphy that included the items seized by the searching officers that had not been particularly described in the original warrant. *Id.* at 5. Plaintiffs further allege that on January 23, 2023, Defendants Rivera and Hays requested and received a search warrant—again signed by Murphy—for Adair's mobile phone.

In Count 1 of their Amended Complaint, Plaintiffs allege that their Fourth Amendment rights to be free from unreasonable search and seizure were violated because the search warrants were not issued by a neutral and detached judge, but rather by Defendant Murphy who was biased and failed to scrutinize the overly broad warrants because she had a prior personal relationship with Defendant Hays. In Count 2, Plaintiffs allege that Defendants violated their Fourth Amendment rights because they searched for and seized items at their residences that were not particularly described in the residential search warrant, and because they searched areas of the property where there was no reasonable expectation that items listed in the warrant might be found.

In Count 3, Plaintiffs allege that Defendants violated the Fourth Amendment particularity requirement by obtaining overly broad warrants, which lacked probable cause. In Count 4, Plaintiffs again allege violation of the Fourth Amendment right to be free from unreasonable search and seizure as well as violation of their Fifth and Fourteenth Amendment due process rights as a result of Defendants failing to list seized items on the inventory lists, failing to conduct an inventory of seized evidence from Plaintiffs' residences in Plaintiffs' presence, and signing the lists (Defendants Rivera and Hays) despite not being present for most of the search. Plaintiffs also allege that Defendants unlawfully seized and did not return documents (trip reports) that were necessary for them to respond to an audit of BHO being conducted by the U.S. Forest Service. Plaintiffs allege that their non-response to the audit resulted in Plaintiffs losing their USFS special-use permit and their ability to conduct hunts with clients, ultimately forcing them to close their business.

In their proposed Second Amended Complaint [Dkt. No. 44-1], Plaintiffs would add three new causes of action. In putative Count 5, Plaintiffs allege that Defendants engaged in a conspiracy to violated Plaintiffs' Fourth Amendment rights by exceeding the scope of the warrant in violation of 42 U.S.C. § 1983. They assert that on August 30, 2022, Defendants participated in a pre-search warrant execution meeting at which they discussed items to search for and seize that were not particularly described in the residential search warrant and were not related to the case. *Id.* at 22 of 27 Plaintiffs also allege that Defendants conspired to use the residential warrant as a pretext for a general exploratory search and conspired to later obtain an amended search warrant to include extra items not enumerated in the original, in violation of Plaintiffs' rights. *Id.* at 22-23 of 27.

Plaintiffs also seek to add two new claims (putative Counts 6 and 7) under the New Mexico Electronics Communications Privacy Act ("ECPA"), NMSA 1978, § 10-16F-1 et seq. These

3

appear to be claims against Defendants Rivera and Hays only. *Id.* at 23-25 of 27. Plaintiffs allege

that Defendants Rivera and Hays violated the ECPA in Counts 6 (search warrant for Plaintiffs'

business email account) and 7 (warrant for Adair's mobile phone) by failing to serve Plaintiffs

with a notice informing them that "information about [Plaintiffs] has been compelled or requested

and that states with reasonable specificity the nature of the government investigation under which

the information is sought," as well as "describe[ing] with particularity the information to be seized

by specifying  the time periods covered and . . . the natural person or accounts targeted . . ." *Id.* at

23-25 of 27 (internal quotations omitted).

### <u>LEGAL STANDARD</u>

Rule 15 of the Federal Rules of Civil Procedure provides for liberal amendment of

pleadings. Granting leave to amend is discretionary. *Foman v. Davis*, 371 U.S. 178, 182 (1962);

*Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799 (10th Cir.1998). Leave to amend a complaint

should be "freely give[n]...when justice so requires," Fed. R. Civ. P. 15(a)(2). *See also Castleglen,*

*Inc. v. Resolution Trust Company*, 984 F.2d 1571, 1585 (10th Cir. 1993) (internal citations

omitted) (finding that amendment under the rule has been freely granted).  "If the underlying facts

or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded

an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. "Refusing leave to amend

is generally only justified upon a showing of undue delay, undue prejudice to the opposing party,

bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or

futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993), *Castleglen,*

*Inc.*, 984 F.2d at 1585.

A district court construes a pro se party's pleadings liberally and holds them to a "less

stringent standard than [that standard applied to] formal pleadings drafted by lawyers." *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the petitioner] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* The courts' obligation to construe pro se filings liberally is at constant tension with the duty against assuming the role of an advocate: liberally construing a pro se pleading does not mean supplying additional factual allegations or offering a legal theory on a petitioner's behalf. *Whitney v. New Mexico,* 113 F.3d 1170, 1173-74 (10th Cir. 1997). Moreover, "pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

## DISCUSSION

### 1. Count 5 – Conspiracy to Violate Fourth Amendment

Defendants Hughes and Bugayong argue that the Court should deny Plaintiffs leave to file their proposed Second Amended Complaint because their claims should be dismissed under Rule 12(b)(6) and therefore amendment would be futile. Defendants contend that the proposed Second Amended Complaint does not identify any actionable conduct by either Defendant Hughes or Defendant Bugayong and therefore cannot survive a motion to dismiss. Dkt. No. 45 at 4. In response, Plaintiffs argue that there is no heightened pleading requirement for § 1983 claims, and they contend that their allegations satisfy Rule 8 by alleging how each defendant personally participated in illegal conduct. Dkt. No. 48 at 2.

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pled factual allegations, but not conclusory or unsupported allegations, and may not consider matters

outside the pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. *Twombly*, 550 U.S. at 570.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, do not state any claim for relief. *Robbins*, 519 F.3d at 1249-50.

### B. Allegations in Proposed Second Amended Complaint

Plaintiffs make very similar allegations regarding Defendants Hughes and Bugayong. They allege that at all relevant times both Defendants were citizens of New Mexico, and that Hughes was employed as the Catron County Sheriff, Dkt. 44-1 at 3-4 of 27, while Bugayong was employed as the Catron County Under Sheriff[1], *Id.*, and that both were acting in their official capacities. Dkt. 44-1 at 3-4 of 27. Plaintiffs also allege that Defendants Bugayong and Hughes were present with others at a "pre-search warrant execution meeting" at the Catron County Sheriff's office on the early morning of August 30, 2022, prior to the execution of the residential search warrant. *Id.* at 4 and 21-22 of 27. Plaintiffs allege that various other individuals attended this meeting, including the other Defendants in this case (Ronny Hays, Clovis Rivera, and Casey Gehrt), as well as other law enforcement officers not named as defendants. *Id.* at 21-22 of 27. Plaintiffs refer to all in attendance at the meeting collectively as "Searching Persons." Doc. 44-1 at 4 of 27. Plaintiffs allege that during the meeting, the "Searching Persons" discussed items to search for and seize that were not related to the BHO investigation and were not described in the residential warrant but rather appeared on two separate lists of items that included various tools, saws, and a staple gun. *Id.* at 5 and 22 of 27. Plaintiffs allege that "if probable cause existed" to search for and seize the items on the two lists, the Searching Persons "had sufficient time to have [the lists] added to the Residence Warrant, but they failed to do so." *Id.* at 5 and 22 of 27.

Plaintiffs allege that during the search of Plaintiff Adair's residence, Bugayong observed a DeWalt miter saw, *Id.* at 6 of 27; that both Hughes and Bugayong performed an unreasonable search by moving and manipulating the saw, *Id.* at 11 of 27; that Hughes directed Bugayong to

---

[1] Defendants clarify that Plaintiffs have incorrectly alleged that Defendant Michael Bugayong was "employed as the Catron County Under Sheriff," when in fact Defendant Bugayong was a Deputy Sheriff at all material times. Dkt. No. 45 at 1-2.

seize the saw, *Id.*; and that Bugayong did in fact seize the saw. *Id.* Plaintiffs further allege that Bugayong performed an unreasonable search in Plaintiff Nicold's outbuilding by moving and manipulating a DeWalt tool kit shipping box to determine if the tools matched similar tools on one of the lists and then determined that the tools did not in fact match. *Id.* Plaintiffs allege that despite this determination, Bugayong seized the items from the DeWalt shipping box, to include cordless tools and a pneumatic staple gun from Nicolds' Lodge. *Id.* Similarly, Plaintiffs allege that Bugayong performed an unreasonable search by moving and manipulating a Stihl chain saw in order to check the saw's serial number to determine if it matched the serial number on one of the lists. *Id.* at 12 of 27. Plaintiffs also claim that with Hughes' approval, Bugayong seized Adair's mobile phone and then misrepresented to Adair that if Adair gave him the passcode, the phone would be returned to Adair quickly. *Id.* at 13 of 27. Plaintiffs allege that Bugayong slandered Plaintiffs by telling numerous others that they were guilty of the crimes for which they were being investigated and would go to prison.[2] *Id.* at 19. Finally, Plaintiffs allege that Hughes searched Nicolds' neighbors' residence[3] despite being told that it was not Nicolds' home. *Id.* at 19 of 27.

With regard to Count 5, the proposed Second Amended Complaint adds a few new allegations: The Defendants and the Searching Persons "discussed a number of items to search for and seize that were not particularly described in the Residence Warrant and were not related to the case." *Id.* at 22 of 27. They further allege that Defendants and the Searching Persons … "conspired to use the Residence Warrant as a pretext for a general exploratory search or fishing expedition to look for the items on [the lists] and for other items relative to BHO and Plaintiffs that were not

---

[2] Plaintiffs have not specifically enumerated a claim for slander. Plaintiffs have also not alleged to whom the slanderous comments were made.

[3] It is unlikely that Plaintiffs have standing to assert a claim for the allegedly improper search of a third-party neighbor's home. Because that issue is not currently before the Court, however, it will not be addressed here.

particularly described in the Residence Warrant." *Id.* at 22 of 27. In addition, Plaintiffs allege that "the Defendants and Searching Persons conspired to violate Plaintiffs' civil and constitutional rights by later obtaining an amended search warrant to include any items they found [on the lists]." *Id.* Plaintiffs assert that during the execution of the residential warrant, Defendants and Searching Persons completed their conspiracy by searching for the items on the lists that were not enumerated on the Residence Warrant, finding similar items that were not in fact enumerated on the lists either, seizing them, and then later requesting an amended warrant enumerating the previously seized items. *Id.* at 23 of 27.

### C. Conspiracy Under § 1983

For their § 1983 conspiracy claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege specific facts in the proposed Amended Complaint "tending to show agreement and concerted action" among the Defendant officers. *See Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983); *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022) (observing that to state a Section 1983 conspiracy claim, a plaintiff has to allege "specific facts showing an agreement [upon a common, unconstitutional goal], and concerted action [taken to advance that goal") among defendants"); *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010) ("while we have said allegations of a conspiracy may form the basis of a § 1983 claim, we have also held a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants" because [c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim").

"The Fourth Amendment requires search warrants to 'particularly describe the place to be searched, and the persons or things to be seized ...'" *United States v. Katoa*, 379 F.3d 1203, 1207 (10th Cir. 2006) (quoting the Fourth Amendment). "The particularity requirement ensures that a

search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Leahy*, 47 F.3d 396, 397 (10th Cir. 1995). "When a logical nexus exists between seized but unnamed items and those items listed in the warrant, the unnamed items are admissible." *United States v. Gentry*, 642 F.2d 385, 387 (10th Cir. 1981).

Plaintiffs have alleged that Defendants Bugayong and Hughes met with the other Defendants and the Searching Persons before executing the residential search warrant and that, as a group, they discussed and agreed to search for items not enumerated in the warrant—in other words, that they agreed and planned to exceed the scope of the warrant, which as discussed above violates the Fourth Amendment. They also have alleged that Defendants actually did exceed the scope of the warrant when they conducted the search. These allegations are enough to survive a motion to dismiss for failure to state a claim. Accordingly, Plaintiffs will be permitted to amend their complaint to add Count 5.

**2. Counts 6 and 7 – New Mexico Electronics Communications Privacy Act**

Defendants Hays, Rivera, and Gehrt argue that the Court should deny Plaintiffs leave to amend their complaint to add claims under the New Mexico ECPA because to do so would be futile. Specifically, they argue that the statute does not provide Plaintiffs with a private cause of action for civil damages. Dkt. No. 46 at 1. Conversely, Plaintiffs argue that the Court should construe the statute to imply a private right of action. Dkt. No. 49.

Because the ECPA is a relatively new statute enacted by the New Mexico Legislature in 2019, there is little case law discussing it. In general, the ECPA circumscribes the way a government entity may compel the production of or access to electronic communications, requires search warrants to meet certain specifications, and limits the reasons and duration for which

information obtained as a result of execution of the warrant may be retained. *See* NMSA 1978, § 10-16F-3.

Section 10-16F-5 sets forth the statute's enforcement mechanisms in three parts. Section 10-16F-5(A) states that "[a] person in a trial, hearing or proceedings may move to suppress any electronic information obtained or retained in violation of the United States constitution, the constitution of New Mexico or the [ECPA]." Next, the ECPA gives power to the attorney general to "commence a civil action to compel a government entity to comply with the [ECPA.]" § 10-16F-5(B). Finally, Section 10-16F-5(C) authorizes "[a] natural person, service provider or other recipient of a warrant" obtained improperly to "petition the court that issued the warrant, order or process to void or modify it or order the destruction of any information obtained in violation" of the law.

To determine whether the ECPA grants Plaintiffs a private right of action, this Court must apply New Mexico's rules of statutory construction. *See generally United Rentals Nw., Inc., v Yearout Mech., Inc.*, 573 F.3d 997, 1001 (10th Cir. 2009). *See also United States v. Ruiz*, 589 F.3d 1310, 1313 (10th Cir. 2009) (stating that when the highest court in a state has not interpreted a statute, "a federal court must follow state rules of statutory construction."). When deciding whether a statute implies a private right of action, the New Mexico Supreme Court directs trial courts to consider three questions:

> (1) Was the statute enacted for the special benefit of a class of which the plaintiff is a member? (2) Is there any indication of legislative intent, explicit or implicit, to create or deny a private remedy? [and] (3) Would a private remedy either frustrate or assist the underlying purpose of the legislative scheme?

*Yedidag v. Roswell Clinic Corp.*, 2015-NMSC-012 at ¶ 31, 346 P.3d 1136, 1146 (citing *Nat'l Trust for Historic Pres. v. City of Albuquerque*, 1994-NMCA-057 at ¶ ¶ 7, 11, 874 P.2d 798). The parties agree that the Court must follow this analysis.

As to the first factor, the Court concludes that the statute was enacted to protect members of the public whose electronic information is seized by government actors. Plaintiffs are such persons, and therefore they are part of a class for which the statute was enacted. This factor weighs in favor of a private right of action.

As to the second *Yedidag* factor, however, it is very clear that the New Mexico Legislature did not intend to create a private remedy. This is because the statute grants enforcement authority through a civil action to the Attorney General only, leaving individuals with only what Defendants call "defensive remedies"—the ability to move to suppress unlawfully obtained evidence, to move to quash or modify a warrant, or to request destruction of improperly obtained evidence. NMSA 1978, § 10-16F-5. The Legislature could easily have included a private cause of action when it crafted § 10-16F-5, and the Court presumes that the Legislature knew how to do so if that was its intent. Indeed, the Legislature has done just that with other statutes enacted at around the same time as the ECPA. *See, e.g.,* New Mexico Civil Rights Act, NMSA 1978, § 41-4A-3(B) (creating a private right of action under that statute). The fact that in this instance the Legislature explicitly chose not to create a private right of action weighs heavily against the inference that such a cause of action exists.

Finally, under the third *Yedidag* factor, the Court must ask whether a private remedy would frustrate or assist the underlying purpose of the ECPA. Plaintiffs argue that a private remedy would facilitate the purpose of the statute, which is to limit government intrusion into electronic communications by requiring government accountability to the public and promoting compliance

with the statute's safeguards. Dkt. No. 49 at 4. On the other hand, Defendants contend that the purpose of the ECPA is to balance privacy interests with law enforcement needs and oversight by the Attorney General, and they argue that implying a private right of action would upset that balance. Dkt. No. 46 at 4. The Court agrees with Defendants. Allowing individuals to sue government entities and officers for damages under the ECPA would upset the balance set forth in the statute and potentially expose public entities to additional litigation and liability without the express will of the Legislature. The Court also notes that the lack of a private cause of action does not leave potential plaintiffs without a remedy—they may still sue state actors under 42 U.S.C. § 1983 for violation of the Fourth Amendment and other constitutional rights, as Plaintiffs have done in this case. Accordingly, the third factor also weighs against finding a private cause of action for damages in the ECPA.

In light of the foregoing analysis of the *Yedidag* factors, the Court concludes that there is no private right of action under the ECPA, and therefore an amendment to add those claims would be futile.

**IT IS THEREFORE ORDERED** that the *Motion to Dismiss Claims Against Defendants Hughes and Bugayong* [Dkt. No. 14] is **GRANTED IN PART and DENIED IN PART**. Plaintiffs may amend their complaint to add their proposed Count 5 only. **IT IS FURTHER ORDERED** that Plaintiffs shall file their Second Amended Complaint in conformance with this opinion not later than March 6, 2026.

**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**